**WAJDA LAW GROUP, APC**
Nicholas M. Wajda (Cal. Bar No. 259178)
3111 Camino Del Rio North
Suite 400
San Diego, California 92108
(630) 997-0471
nick@wajdalawgroup.com
*Attorney for the Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA J. NORRIS,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH IQ INSURANCE SERVICES, INC. and JOHN DOES 1-10,<br><br>Defendants. | Case No.  5:22-cv-01236<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *ET SEQ.*** |

**CLASS ACTION COMPLAINT**

**NOW COMES** LINDA J. NORRIS ("Plaintiff"), individually, and behalf of all others similarly situated, through her undersigned counsel, complaining of HEALTH IQ INSURANCE SERVICES, INC. ("Defendant"), as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this action seeking redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2.      "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.,* 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) as Defendant resides in this judicial district.

## PARTIES

6. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Nampa, Idaho.

7. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant is a health insurance provider that markets its insurance products to consumers nationwide. Defendant focuses its marketing on Medicare supplement insurance policies directed at elderly consumers.

9. Defendant maintains its principal place of business at 2513 Charleston Road, Mountain View, California.

10. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

11. JOHN DOES 1-10 are third party vendors/agents that Defendant engages to place outbound marketing calls to consumers on Defendant's behalf.

12. In the marketing calls placed by JOHN DOES 1-10, JOHN DOES 1-10 falsely identify themselves as "Health IQ."

13. Defendant is vicariously liable for the acts of JOHN DOES 1-10.

**FACUTAL ALLEGATIONS**

14. Upon information and belief, Defendant develops marketing campaigns using a combination of sales channels, with an emphasis on outbound telemarketing.

15. Upon information and belief, Defendant utilizes third-party vendors (John Does 1-10) to market its insurance products.

16. Upon information and belief, Defendant's vendors are essential to the success of its telemarketing campaigns.

17. Upon information and belief, Defendant's ability to generate revenue significantly depends on its access to high-quality vendors.

18. Defendant is subject to liability under the TCPA for actions of its third-party vendors who engage in outbound telemarketing efforts on Defendant's behalf.

19. Upon information and belief, Defendant's third-party vendors identify themselves as representatives of "Health IQ."

20. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the number ending in 4175.

21. At all times relevant, Plaintiff's number ending in 4175 was assigned to a cellular telephone service.

22. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

23. Plaintiff's cellular phone number ending in 4175 is registered on the National Do Not Call Registry.

24. Plaintiff is an elderly woman that has Medicare insurance coverage.

25. In the fall of 2021 (September or October), Plaintiff started to receive solicitation calls from Defendant.

26. At no point in time did Plaintiff solicit or request a health insurance policy from Defendant.

27. At no point in time did Plaintiff provide her cellular phone number to Defendant.

28. Shortly after Defendant's solicitation calls began, Plaintiff answered a call.

29. Immediately upon answering Defendant's solicitation calls, Plaintiff was greeted by a prerecorded voice that prompted Plaintiff to press a certain number to be connected to a live representative.

30. At first, Plaintiff would just hang up as she was not in need of any additional health insurance.

31. Despite Plaintiff expressing no interest in Defendant's services, Defendant continued placing solicitation calls to Plaintiff's cellular phone.

32. On at least three separate occasions, Plaintiff and/or her grandson answered Defendant's phone calls and pressed a designated number to speak to a live representative.

33. During these calls, Plaintiff and/or her grandson requested that Defendant cease its solicitation calls.

34. Despite Plaintiff's requests that the calls cease, Defendant continued to bombard Plaintiff with daily prerecorded calls ("robocalls").

35. Specifically, on February 15, 2022, Defendant placed forty-four (44) robocalls to Plaintiff's cellular phone number from the phone number (866) 738-9183.

36. On February 16, 2022, Defendant placed forty-seven (47) robocalls to Plaintiff's cellular phone number from the phone number (866) 738-9183.

37. On February 16, 2022, Plaintiff's grandson was visiting Plaintiff and witnessed Defendant's incessant robocalls to Plaintiff.

38. Angered by the harassing nature of the robocalls and the stress it was causing his grandmother, Plaintiff's grandson returned one of Defendant's robocalls.

39. During this call, Plaintiff's grandson was greeted with an automated menu.

40. After making a selection, Plaintiff's grandson was connected a live representative.

41. During the call, Plaintiff's grandson (1) advised Defendant that his grandmother is chronically ill; (2) advised Defendant that the calls were harming his grandmother; an (3) demanded that the calls cease.

42. Plaintiff's request (through her grandson) that the solicitation calls cease fell on deaf ears yet again and Defendant continued to bombard Plaintiff with robocalls at all times of the day, including calls as late as 10 p.m.

43. Most, if not all of Defendant's robocalls were placed from phone number (866) 738-9183.

44. Moreover, Defendant sent text messages to Plaintiff's cellular phone stating:

> "Could you have extra Medicare benefits like vision and dental? With excellent quality & satisfaction? Check your eligibility. Call Health IQ: (855) 461-7133."

45. In total, Defendant placed over two-hundred (200) robocalls to Plaintiff's cellular phone without Plaintiff's consent.

**DAMAGES**

46. Defendant's illegal marketing practices have caused Plaintiff concrete harm, including: invading Plaintiff's privacy, stress, nuisance, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the solicitation calls, decreased productivity, aggravation that accompanies unwanted solicitation calls, frustration, loss of concentration, and the loss of battery charge.

47. Moreover, each time Defendant placed a robocall to Plaintiff's cellular phone, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize her cellular phone while her phone was ringing.

48. Concerned with the escalation of Defendant's invasive marketing practices, Plaintiff retained counsel to file this action to compel Defendant to cease its unlawful practices.

## CLASS ALLEGATIONS

49. All preceding Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

50. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals in the United States (1) who do not have an active insurance policy with Defendant; (2) to whom Defendant, or a third party acting on Defendant's behalf, placed, or caused to be placed, a phone call; (3) directed to a number assigned to a cellular telephone service; (4) using an artificial or prerecorded voice; (5) without the individual's prior express written consent; (6) within the four years preceding the date of this complaint through the date of class certification.

51. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) individuals who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such excluded individuals; and (6) individuals whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.   Numerosity**

52. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

6

53. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and can only be determined through targeted discovery.

54. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

55. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant or its third-party vendors.

### B.  Commonality and Predominance

56. There are many questions of law and fact common to the claims of Plaintiff and the claims of the members of the Putative Class.

57. Those questions predominate over any questions that may affect individual members of the Putative Class.

### C.  Typicality

58. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendant's unlawful marketing practices.

### D.  Superiority and Manageability

59. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

60. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

61. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

62. Economies of effort, expense, and time will be fostered, and uniformity of decisions ensured.

**E.     Adequate Representation**

63. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

64. Plaintiff has no interests antagonistic to those of the members of the Putative Class and Defendant has no defenses unique to Plaintiff.

65. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

### CLAIMS FOR RELIEF

**COUNT I:**
**Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)**
**(On behalf of Plaintiff and the Members of Putative Class)**

66. All preceding Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

67. Among other things, the TCPA prohibits calls to wireless and residential numbers unless the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A).

68. Under the TCPA consent rules, some types of calls require prior express written consent, while other types of calls do not require that the consent be in writing.

69. "Prior express written consent" is required for (a) all telemarketing/promotional calls/texts made using an automatic telephone dialing system ("ATDS") placed to wireless numbers, and (b) all artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[1]

---

[1] 47 C.F.R. §§ 64.1200(a)(2) and (3).

70. The TCPA consent rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."[2]

71. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing or causing to be placed no less than two-hundred (200) solicitation calls to Plaintiff's cellular telephone, utilizing an artificial or prerecorded voice, without Plaintiff's prior express written consent.

72. As pled above, Defendant used an artificial or prerecorded voice that automatically played upon Plaintiff answering Defendant's calls.

73. As pled above, Plaintiff never provided Defendant with her cellular phone number or otherwise consented to receiving phone calls from Defendant.

74. Moreover, as pled above, Plaintiff revoked any prior consent Defendant may have believed it had during at least three phone calls in which Plaintiff and/or her grandson spoke to a live representative.

75. Upon information and belief, it is Defendant's business practice to place robocalls to elderly consumers without their prior express written consent, a practice designed to maximize profits at the expense of vulnerable elderly consumers.

76. Upon information and belief, Defendant does not maintain adequate procedures or protocols to ensure that Defendant has the requisite consent to place solicitation calls to consumers.

77. As a result of Defendant's willful violations of the TCPA, Plaintiff and the members of the Putative Class are entitled to receive up to $1,500.00 in treble damages for each such violation.

---

[2] 47 C.F.R. § 64.1200(c)(2)(ii).

9

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. an order enjoining Defendant from placing or causing to place further violating calls to consumers;

C. judgment in Plaintiff's favor for Defendant's violations of the TCPA;

D. judgment in favor of the putative class for Defendant's violations of the TCPA;

E. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each violating call;

F. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each violating call; and

G. any further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: February 28, 2022                                              Respectfully submitted,

**LINDA J. NORRIS**

By: */s/ Nicholas M. Wajda*

Nicholas M. Wajda
**WAJDA LAW GROUP, APC**
3111 Camino Del Rio North
Suite 400
San Diego, California 92108
(310) 997-0471
nick@wajdalawgroup.com